# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ROJAS-LOPEZ,<br><br>　　　　　　　　　　Petitioner,<br>　vs.<br><br>MIKE MCDONALD, Warden,<br><br>　　　　　　　　　　Respondent. | CASE NO. 11cv2304-IEG (KSC)<br><br>**REPORT AND RECOMMENDATION DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

On November 7, 2011, Jorge Rojas-Lopez (Petitioner), a state prisoner proceeding *pro se*, filed his First Amended Petition for Writ of Habeas Corpus (Am. Pet.) pursuant to 28 U.S.C. § 2254. [Doc. No. 5.] Petitioner challenges his conviction for kidnapping for ransom, claiming that the victim did not suffer bodily harm pursuant to California Penal Code § 209(a). (Am. Pet. at 6-7.)[1] He argues that his Constitutional right to due process, protected by the 5th and 14th Amendments, was violated because (1) there was insufficient evidence at trial to warrant the jury's finding of bodily harm, which enhanced his sentence; and (2) the court erred in instructing the jury that great bodily injury was not required for a finding of "bodily harm." (Am. Pet. at 6-7.)

The Court has considered the Amended Petition (Am. Pet.), Respondent's Answer and

---

[1] Where pertinent, the Court will refer herein to page numbers provided for documents through the electronic case filing system, unless otherwise noted.

Memorandum of Points and Authorities (Resp't's Mem.), and all of the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **RECOMMENDS** Petitioner's Amended Petition be **DENIED**.

## II. FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1) (West 2007); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding that findings of historical fact, including inferences properly drawn from such facts, are entitled to a statutory presumption of correctness). The facts as found by the state appellate court are as follows:

> The plot to kidnap Tostado for ransom played on his apparent appreciation of good-looking women. David Valencia, a person Tostado believed to be a friend, introduced him to "Nancy," on the afternoon of June 7, 2007. Tostado met with Nancy late the next afternoon, followed her to what she represented as her aunt's house in Chula Vista, and agreed to return in a short time to take her to dinner in Tijuana. After picking up a package of condoms and the liquor Nancy requested, Tostado returned to join her for drinks at the house. When Nancy opened the door and Tostado stepped inside, two men tackled him from behind.
>
> One of the attackers had his arm around Tostado's neck, and the other had an arm around his leg. At least two other men came down the hall three seconds later dressed like police, wearing ski masks, and carrying long black rifles. They started to hit him with the back of the rifle, got him on the ground, and continued hitting him in the head and on his back and legs. Tostado started to get up, but the men began shooting him with tasers. After Tostado was on the ground and no longer resisting, he felt one big blow on the back of the head. He was not sure if he lost consciousness. The men laughed when they discovered the taser had caused Tostado to urinate and defecate on himself. They taped Tostado's ankles, handcuffed his wrists, and dragged him to the back of the house where they confined him in a small closet for eight days.
>
> The prosecutor asked Tostado on direct examination, "Other than that first day, . . . were you mistreated? Were you hit by any of the kidnappers?" Tostado responded, "After that, no." However, Tostado testified that he remained blindfolded, shackled, handcuffed, and confined in a closet.
>
> Tostado testified about the photographs taken of his injuries on the day of his release, including bruises, an indentation on the bridge of his nose, marks on his wrists from the handcuffs, and burns on his back from the taser. The following exchange took place during cross-examination by the defense counsel for Gonzalez:
>
> "[COUNSEL]: Now, according to your testimony, those were the only injuries that you received, correct?
>
> "[TOSTADO]: Yes.
>
> "[COUNSEL]: Once you were subdued, according to your testimony, you were treated well. Would that be a correct statement?
>
> "[TOSTADO]: You can say so."

   Tostado described interactions with at least five individuals in the course of his confinement. They periodically threatened him with death if he tried to escape, did something stupid, or failed to pay the money they demanded. Three men he referred to as Morro, Asere and Tio guarded and fed him. The men who described themselves as "Boss No. 1" and "Boss No. 2" seemed to be calling the shots and eventually demanded $1 million from Tostado and his family. When Boss No. 1 and Boss No. 2 learned that the family was having trouble getting the money, they told Tostado to tell his family to keep working because they could not afford to let him go for so little.

   Unbeknownst to the kidnappers, Tostado's wife and cousin Sergio contacted the FBI shortly after Tostado's disappearance. The FBI analyzed subsequent phone contacts between the kidnappers and the family, and ultimately supervised the ransom drop. Although most of the $193,000 ransom was never recovered, Tostado was rescued and several of the kidnappers arrested, including Lopez and Gonzalez. Tostado identified the voices of Lopez and Gonzalez as those of Boss No. 1 and Boss No. 2.

   FBI Agent Lauren Wood was present when Tostado was released on June 16, 2007. She described his emotional state as "very distraught, shaking, on the verge of crying, just hysterical, but at the same time very relieved." She described an indentation and bruise mark on the bridge of Tostado's nose, small puncture wounds on his back that had started to scab over, and a scar on his right shoulder. She also observed slight bruising on Tostado's wrists where the handcuffs appeared to have been tightened. Sergio Tostado saw his cousin the next day. He also observed the scars on Tostado's back and the mark from the blow to the bridge of his nose.

   Forensic pathologist Steven Charles Campman testified about taser injuries in general, then turned to photographs of the injuries to Tostado. He described the paired and round marks on Tostado as classic taser injury. In addition, the beginning of scarring was consistent with infliction on June 8, 2007. However, he considered the actual skin injury to Tostado to be "trivial or insignificant." Dr. Campman also testified that tasers overwhelm the nervous system and disrupt muscle control. He stated that repeated, prolonged application could cause or contribute to death, an opinion disputed by the taser manufacturer. Further investigation by San Diego police showed that one of the tasers recovered from the house where Tostado was confined had been fired 10 times in less than a minute in June 8, 2007.

(Lodgment ("Lodg.") 8 at 1-5.)

### III. PROCEDURAL BACKGROUND

On November 20, 2008, a jury found Lopez guilty of kidnapping for ransom, and that the victim suffered bodily injury during the kidnapping within the meaning of section 209(a). (Lodg. 2, Vol. No. 2 at 482.) The jury also convicted Lopez of possession of an operable firearm while in possession of a controlled substance. *Id.* at 484. On January 30, 2009, the court sentenced Petitioner to life in prison without the possibility of parole, and imposed an additional two year sentence for the firearm possession charge. (Lodg. 2 Vol. No. 3 at 579-81.) Lopez appealed the judgment to the California Court of Appeal. (Lodg. 3.) On July 15, 2010 the appellate court filed an unpublished opinion affirming the judgment and unanimously rejecting his claims. (Lodg. 8.) Lopez promptly

filed a petition seeking review in the California Supreme Court which was denied on October 27, 2010, without citation or comment. (Lodg. 13.)

Petitioner filed a Petition for Writ of Habeas Corpus in this Court on November 7, 2011.

## IV.  SCOPE OF REVIEW

This Petition is governed by Title 28, United States Code, § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA").  Section 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the *ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

28 U.S.C. § 2254(a) (2006) (emphasis added).

As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007); quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, state court decisions will not be "contrary to" clearly established federal law. *Id.*

## V. DISCUSSION

Lopez makes two claims: (1) there was insufficient evidence at trial to warrant the jury's finding of bodily harm; and (2) the court erred in instructing the jury that great bodily injury was not required for a finding of bodily harm.

In response, the Respondent contends that the California Court of Appeal properly rejected these claims on the merits because (1) Lopez used more force than was necessary to effectuate the kidnapping and there was sufficient evidence to support the jury's finding; and (2) the trial court properly instructed the jury on bodily harm. (Resp't's Mem. at 9-17.)

### A. Evidence Was Sufficient To Support Jury Finding Of Bodily Harm

Lopez contends that there was insufficient evidence at trial to warrant the jury's finding of bodily harm, resulting in a sentencing enhancement which disallowed his possibility of parole. (Am. Pet. at 6.) In support of his claim, Petitioner provides a recitation of the facts pertaining to the treatment of the victim. (Am. Pet. at 6).

Respondent first argues that the kidnapping was complete once the victim entered the house, meaning that all of the force used was in excess of that necessary to effectuate the kidnapping. (Resp't's Mem. at 12.) Respondent next argues that even if the use of force was necessary, once the victim was incapacitated, the attack that followed was gratuitous. (Resp't's Mem. at 12.) Referencing

trial testimony, Respondent states that the victim was entirely incapacitated after being beaten and shocked with a stun gun, leaving him unable to move his body or put up any resistance. (Resp't's Mem. at 12; citing Lodg. 1 at 513.) Respondent claims that at this point any subsequent violence was unnecessary. (Resp't's Mem. at 12.) Regardless, the men continued to beat the victim, punching and kicking him, until they finally delivered a blow to the back of his head rendering him possibly unconscious.[2] (Resp't's Mem. at 12; Lodg. 1 at 513-14.)

Petitioner's insufficiency claim was analyzed by the appellate court in the following way:

> The first question is whether Tostado sustained "a substantial or serious injury" by "application of physical force." (*Chacon*, *supra*, 37 Cal.App.4th at p. 59.) We conclude there is substantial evidence to support the finding that he did. Defendants and their cohorts beat Tostado on the head, back, stomach and legs with their fists and something hard. He went to the ground when defendants started using the taser. Evidence showed that one of the tasers recovered by police had been fired 10 times in less than a minute on the evening in question. The taser left Tostado almost unconscious and unable to move. Defendants hit and kicked him in the back and stomach after he was down. Tostado felt one big blow on the back of his head. He was not sure if he lost consciousness, but stated, "I was pretty bad." Dr. Campman testified that "the actual skin injury" caused by the taser was "trivial or insignificant." However, Dr. Campman's other testimony regarding the immediate and possible long-term effects of repeated taser use, together with Tostado's description of the attack, provided sufficient evidence to withstand defendants' challenge.
>
> The next question is whether there is sufficient evidence that defendants used force beyond that necessarily involved in the forcible kidnapping. (*Chacon*, *supra*, 37 Cal.App.4th at p. 59.) Tostado testified that defendants and their associates hit and kicked him on the head, back and stomach after he was down and nearly unconscious. As we stated, Tostado felt "one big blow" on the back of the head. The jury could reasonably infer that defendants had subdued Tostado at the point he was on the floor and unable to move, and that the continued use of force, including the big blow to the head, was beyond that necessary to subdue or hold him. Accordingly, we conclude there is substantial evidence to support the jury's finding.

(Lodg. 8 at 10-11 (internal quotations omitted).)

To determine whether the state court's decision was contrary to clearly established federal law, this Court must, in viewing the evidence in the light most favorable to the prosecution, determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972). California Penal Code section 209(a) states that any person who kidnaps

---

[2] The record is unclear, even by the victim's own testimony, as to whether the victim actually lost consciousness.

1  another person for ransom shall be "punished by imprisonment in the state prison for life *without*
2  *possibility of parole* in cases in which any person . . . suffers death or *bodily harm* . . . or a substantial
3  likelihood of death . . . ." CAL. PENAL CODE § 209(a) (emphasis added).

4  "Bodily harm" for the purposes of section 209 requires (1) a substantial or serious injury to the
5  body of the kidnapped victim, (2) by application of physical force, (3) beyond that necessarily involved
6  in the forcible kidnapping. *People v. Chacon*, 37 Cal. App. 4th 52, 59 (2nd Dist. 1995); citing *People
7  v. Schoenfeld*, 111 Cal. App. 3d 671, 685 (1st Dist. 1980). The determination of whether "bodily
8  harm" has been suffered is a factual question to be decided by the trier of fact. *Chacon*, 37 Cal. App.
9  4th at 59.

10  Here, the trier of fact was the jury which observed testimony about the physical abuse of the
11  victim during the course of his kidnapping. The Respondent argues that every element of kidnapping
12  was satisfied before Tostado suffered any bodily harm, thus all of the physical force used to detain him
13  was "beyond that necessarily involved." The Court need not determine at what point the physical harm
14  crossed over from *necessary to effectuate the kidnapping* to *beyond what was necessary*. In viewing
15  the evidence in the light most favorable to the prosecution, a reasonable jury could find that at some
16  point it was unnecessary for the group to continue the beating.

17  Tostado suffered many injuries during the course of the kidnapping. He testified to being
18  beaten with the back of a rifle on his stomach, back, legs, nose and head, by multiple people, resulting
19  in numbness. (Lodg. 1 Vol. No. 4 at 510-11.) He was then tased repeatedly with two stun guns in his
20  back and legs until he was nearly unconscious, left motionless on the ground. (*Id*. at 512-13.) He
21  recalled his muscles shrinking and shaking as he heard the stun gun's electric shocks and felt the
22  electricity. (*Id*. at 512.) Dr. Campman testified that repeated or prolonged application of a taser can
23  cause or contribute to death. (Lodg. 1 Vol. No. 6 at 749.) Evidence showed that one of the tasers had
24  been fired 10 times in less than a minute on that particular evening. (Lodg. 8 at 10.) Being tased so
25  much caused him to defecate and urinate in his pants. (*Id*. at 516.) After being tased, he was hit in the
26  back and stomach while lying on the ground with what felt like kicking, then suffered "one big blow"
27  to the back of his head. (*Id*. at 513-14.)

28  The victim was left motionless, yet the abuse continued through his incapacitation. Such a

finding would prove the elements necessary for "bodily harm" beyond a reasonable doubt. The injuries inflicted upon Tostado were not trivial, and there was certainly not a lack of physical violence for the jury to examine. There exists substantial evidence to support the jury's factual determination that such violence amounted to "bodily harm." The Court finds that the appellate court's denial of claim one was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. For this reason, the Court recommends that Lopez's claim be **DENIED**.

### B. No Error In The Jury Instructions

Lopez contends that there was instructional error when the trial court modified the standard "bodily harm" jury instruction, informing the jury that great bodily injury was not required for a finding of bodily harm. (Am. Pet. at 7.) He states that the judge modified the instructions "at the prosecutor's request" and recalls the shared frustration between judge and jury regarding the law being imprecise. (Am. Pet. at 7.)

Respondent argues that the jury instruction was agreed upon by both parties, and identifies the conversation between the judge and both counsel regarding the jury instruction. (Resp't's Mem. at 14-15.) Respondent recites the addition that each party made to the jury instruction. This included a request from the People to add that "great bodily injury or death is not required" and from the defense that "a trivial injury . . . is insufficient to constitute bodily harm within the meaning of the instruction." *(Id.*; Lodg. 1 at 1806).

Lopez raised this claim on appeal. (Lodg. 3.) In affirming the trial court, the appellate court stated the following:

> The history of section 209 demonstrates that the Legislature: (1) intended to punish persons guilty of kidnapping for ransom or robbery with the most severe sentences short of death in order to deter the carrying away of persons in a manner which substantially increased the risk of injury or death and (2) carefully differentiated between kidnappings deserving sentences of life with the possibility of parole from those deserving life without the possibility of parole based on the extent of the actual harm or risk of harm suffered by the victim. (*People v. Lauren* (1972) 8 Cal.3d 192, 198; *Jackson*, *supra*, 44 Cal.2d at p. 517; *Schoenfeld*, *supra*, 111 Cal.App.3d at pp. 682-686.) And although the Legislature used the term "great bodily injury" sometimes interpreted as "substantial injury" under other statutes (e.g., §§ 245, subd. (a), 667.5, subd. (c)(8) & 12022.7), the fact it elected *not* to use that term in section 209 supports the conclusion it had a different intention. (*People v. Valentine* (1946) 28 Cal.2d 121, 142.) Accordingly, we reject defendants' argument that "substantial" bodily harm is the same as "great" bodily harm.
>
> We conclude that CALCRIM No. 1202 as modified by the court and counsel

was a correct statement of the law. The court properly declined to elaborate on the language of the instruction when asked by the jury and, given this record, there is no reasonable likelihood that the jury misapplied the law. (*Kelly*, *supra*, 1 Cal.4th at p. 525.)

(Lodg. 8 at 14-15.)

A criminal defendant is entitled to adequate jury instructions on his theory of defense. *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984). In addition, the Court may address Lopez's constitutional right to have the jury find the existence of each element of a charged offense beyond a reasonable doubt. *Harmon v. Marshall*, 69 F.3d 963, 965 (9th Cir. 1995); citing *In re Winship*, 397 U.S. 358, 364 (1970). For the enhancement to be overturned, Lopez must show that the instruction violated a due process right protected by the Fourteenth Amendment. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

The Court must scrutinize the instruction not in isolation, but in conjunction with the jury instructions as a whole, along with the entire record. *Estelle*, 502 U.S. at 72. In evaluating the bodily harm instruction given by the trial court, the appellate court stated:

> The court and counsel discussed jury instructions and thereafter placed modifications, arguments and objections on the record. As to CALCRIM No. 1202, the court stated that the parties had reached consensus on additions to the definition of bodily harm "after arguing several issues . . . ." The prosecution added language stating that great bodily injury or death was not required; the defense added language explaining that trivial injury was insufficient to constitute bodily harm within the meaning of the statute. After reading the modified language regarding bodily harm, the court asked whether any party objected to CALCRIM No. 1202 "in the form of which it is now to be given." The prosecutor and both defense counsel responded, "No." Thereafter, the court instructed the jury as follows on kidnapping for ransom:
>
> "Each defendant is charged in count 2 with kidnapping for the purpose of ransom that resulted in bodily harm. To prove that each defendant is guilty of this crime, the People must prove that, one, the defendant kidnapped, abducted, seized, confined, inveigled, enticed or decoyed someone.
>
> "Two, when the defendant acted, he intended to hold or detain the person.
>
> "And three, the defendant did so for ransom or to get money or something valuable.
>
> "It is not necessary that the person be moved for any particular distance.
>
> "Inveigled is further defined as to lure or entice or lead astray by false representations or promises or other deceitful means. Kidnapping by inveiglement may be accomplished when one deceives another and, by

his or her deceptive acts, induces the other into confinement.

"Kidnapping by inveiglement may be accomplished when an association begins voluntarily but the kidnapper's actual purpose is not the reason the victim voluntarily associated with the kidnapper.

"Decoyed is further defined as to entice or tempt or lure. It implies enticement or luring by means of some fraud or trick or temptation, but it excludes the idea of force.

"Now, if you find either defendant guilty of kidnapping for ransom, you must then decide whether the People have proved the additional allegation that any co-principal or perpetrator or co-conspirator caused the kidnapped person to suffer bodily harm. Please refer to the instructions provided elsewhere that I just read to you about who is a co-principal or a perpetrator or a co-conspirator. A co-principal is by aiding and abetting.

"Bodily harm means any substantial physical injury resulting from the use of force that is more than the force necessary to commit a kidnapping. *Great bodily injury or death is not required. A trivial injury, however, is not sufficient to constitute bodily harm within the meaning of this instruction.*

"The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proven." (The modifications at issue are in italics.)

In closing, the prosecution argued that defendants used more force than necessary to capture Tostado, stating: "It's ludicrous to suggest that they needed to do all of those things to successfully kidnap him." The prosecution maintained that defendants committed kidnapping by inveiglement with the aid of Valencia and Nancy, and the kidnapping was complete when Tostado walked through the door. Thus, any further harm he suffered occurred in the course of his confinement and was more than necessary to effectuate the kidnapping. Defendants acknowledged in their closing arguments that Tostado suffered some injuries, but maintained those injuries were trivial. They also argued that the force occurred only as Tostado was being subdued and, by Tostado's own testimony, defendants treated him well after that.

On the second day of deliberations, the jury inquired of the court: "If we are unable to come to consensus on the special circumstances, for either defendant, can we leave it as undecided?" The court questioned the foreperson and other jurors, clarifying that the jury's confusion related to whether the bodily harm went "beyond that which was necessary to commit kidnapping" and whether the harm was "substantial." After hearing argument outside the presence of the jury, the court told the jury it had decided "it would not be appropriate for [it] to elaborate on [CALCRIM No. 1202] beyond what it says." The court then inquired of the foreperson: "If I ask you to assume that that's all you are going to get, do you think, sir, that there is a reasonable probability that the jury might arrive at a verdict if I ask you to continue deliberating . . . on the allegation?" The foreperson responded, "Yes." The jury returned its verdict two hours later, after hearing Dr. Campman's testimony re-read. The jury rejected defendants' arguments and found that Tostado suffered bodily harm within the meaning of section 209, subdivision (a).

(Lodg. 8 at 5-8.)

1  Both the prosecution and Lopez were allowed to modify the instruction so that they could make
2  appropriate arguments in their closings. The appellate court found that CALCRIM No. 1202 as
3  modified by the court and counsel was a correct statement of the law. *See Collier v. Bayer*, 408 F.3d
4  1279, 1283 fn 4 (9th Cir. 2005) (a Federal Court defers to the state court's interpretation of state law).
5  Defense counsel was able to emphasize his case to the jury, arguing that the physical encounter was
6  necessary, in its entirety, to effectuate the kidnapping, and in the alternative that the injuries sustained
7  were not significant enough to establish "bodily injury." He pointed to Tostado's minimal scarring,
8  which Dr. Campman considered "trivial or insignificant," that remained at the time Tostado was
9  rescued two weeks later. (Lodg. 1 Vol. No. 6 at 750.)

10  Read and considered as a whole, the instructions framed the defense theory within the legal
11  requirements for conviction by informing the jury that they could only find Lopez guilty of the
12  enhancement if the requisite elements were satisfied beyond a reasonable doubt. The Court of Appeal
13  determined that the language used in the jury instruction was correctly interpreted and that the
14  instructions given afforded the jury sufficient evidence to find all of the elements required for
15  conviction beyond a reasonable doubt.

16  The Court finds that the appellate court's denial of claim two was neither contrary to, nor an
17  unreasonable application of, clearly established Supreme Court law. For this reason, the Court
18  recommends that Lopez's claim be **DENIED**.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## VI.  CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Irma E. Gonzalez under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **September 5, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 12, 2012**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  August 15, 2012

KAREN S. CRAWFORD
United States Magistrate Judge